UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

--------------------------------------------------------------x

In re                                              Chapter 11

GREAT LAKES COMNET, INC., et al.[1]                Case No. 16-00290 (jtg)

           Debtors.                                (Jointly Administered)

--------------------------------------------------------------x

### INTERIM ORDER (A) AUTHORIZING DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364; (B) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS; (C) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION; (D) MODIFYING THE AUTOMATIC STAY; AND (E) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion") of Great Lakes Comnet, Inc. ("GLC") and Comlink, L.L.C. ("Comlink"), as debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") for entry of an interim order (the "Interim Order") pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and LBR 4001-2, 4001-3, and 9013 seeking, among other things:

(i)     authorization to obtain credit and incur debt pursuant to sections 105, 362, 363 and 364 of the Bankruptcy Code in accordance with the DIP Credit and Security Agreement attached hereto as Exhibit A (the "DIP Loan Agreement"), the Note referred to therein ("DIP Note", together with the DIP Loan Agreement, this Interim Order and the Final Order, the "DIP Financing Documents"), among the Debtors and CoBank, ACB (in such capacity, the "DIP Lender"), subject to the terms and conditions set forth herein;

(ii)    authorization to grant first priority, valid, priming, perfected and enforceable liens (as defined in section 101(37) of the Bankruptcy Code) and superpriority claims to the

---

[1] The Debtors in these Bankruptcy Cases are Great Lakes Comnet, Inc., case no. 16-00290, and Comlink, L.L.C., case no. 16-0092.  On January 27, 2016, the Court entered an Order Directing the Joint Administration of Their Bankruptcy Cases [Dkt. No.    ].

DIP Lender, except to the extent provided herein, against all property of the Debtors' estates, pursuant to sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, and, except to the extent provided herein, with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code;

(iii)   use "cash collateral" as the term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral") and, pursuant to sections 361 and 363 of the Bankruptcy Code, grant security interests, mortgages and other liens and superpriority claims in order to provide adequate protection to the Prepetition Senior Lender (as hereinafter defined);

(iv)   modification of the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement the terms and provisions of the DIP Financing Documents and this Interim Order; and

(v)   scheduling of a final hearing for entry of an order granting the relief requested in the Motion on a final basis (the "Final Order") and approving the form of notice with respect to the Final Hearing (as hereinafter defined) pursuant to Rules 2002, 4001 and 9014 of the Bankruptcy Rules.

This Court having reviewed the Motion, all matters brought to the Court's attention at the preliminary hearing on the Motion held on January 27, 2016, pursuant to Rule 4001 (the "Interim Hearing"), including the (i) the Declaration of John Summersett In Support Of Chapter 11 Petitions and First Day Motions (Dkt. No. 6); (ii) the Declaration of Jason Hill In Support of Debtor-in-Possession Financing (Exhibit B to Dkt. No. 17 ); and (iii) the Declaration of Jeffrey L. Johnston in Support of Debtor-in-Possession Financing (Exhibit C to Dkt. No. 17), the record of which is incorporated herein, and all objections to the Motion and relief granted herein; and after due deliberation and consideration, the Court makes the following findings of fact and

conclusions of law (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*).

**THE COURT HEREBY FINDS:**

A.      On January 25, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing these jointly administered bankruptcy cases (the "Bankruptcy Cases"). The Debtors are now operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. There is no pending request or motion for the appointment of a trustee or examiner. An official committee of holders of unsecured claims (the "Committee") has not been appointed by the United States Trustee.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

C.      Pursuant to (i) the Amended and Restated Master Loan Agreement, dated as of August 1, 2011 (as amended, modified or supplemented, the "Prepetition Financing Agreement"), by and between GLC, as borrower, and CoBank ACB, as lender (in such capacity, the "Prepetition Senior Lender"), and related agreements and documents, including a Subsidiary Guarantee of Payment (Continuing), dated as of August 1, 2011, executed by the Comlink, as guarantor (collectively, with the Prepetition Financing Agreement, the "Prepetition Financing Documents"), the Prepetition Senior Lender has made certain loans and other financial accommodations to or for the benefit of the Debtors. As of the Petition Date, the aggregate amount of approximately $25,165,732.05 was due and owing in respect of principal, accrued and unpaid interest, and fees, costs and other charges owed under the Prepetition Financing Documents (together with any other fees and expenses incurred in connection with the

3

Prepetition Financing Documents, and all other obligations of the Debtors thereunder, the "Prepetition Debt").

D.     To secure the Prepetition Debt and pursuant to the Prepetition Financing Documents, the Debtors granted to the Prepetition Senior Lender security interests in the real and personal property (tangible and intangible) fully described and set forth in the Prepetition Financing Documents, the "Prepetition Collateral," and such security interests shall be referred to herein as the "Prepetition Lender's Liens").

E.     In addition to any Cash Collateral that may be available to the Debtors, an immediate and critical need exists for the Debtors to obtain additional financing in order to continue their businesses without interruption.  Unrestricted Cash Collateral usage alone is insufficient to enable the Debtors to continue to operate.  Without such additional financing, the Debtors will not be able to meet their payroll, pay other direct operating expenses, or obtain goods and services needed to carry on their businesses during this sensitive period in a manner that will avoid irreparable harm to the Debtors' estates, creditors, customers, and employees. Nor will the Debtors be able to reasonably and cost-effectively market and sell their businesses and/or assets as going concerns.  At this time, the Debtors' ability to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the confidence of the Debtors' vendors and suppliers, to their customers, and to the preservation and maintenance of the going concern value of the Debtors' estates.  The Debtors are unable to obtain the required financing in the form of unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense pursuant to section 364(a) or 364(b) of the Bankruptcy Code, unsecured debt having the priority afforded by section 364(c)(1), secured debt as described in

4

section 364(c)(2) or 364(c)(3) of the Bankruptcy Code, or on terms otherwise more favorable than those terms offered by DIP Lender.

      F.     All of the Debtors' assets (other than the assets described as "excepted property" or "deleted" in the financing statements and amendments of record filed by Prepetition Senior Lender before the Petition Date) are subject to the Prepetition Lender's Liens. The Prepetition Senior Lender agrees that it is adequately protected pursuant to the provisions of this Interim Order in satisfaction of section 364(d)(2) of the Bankruptcy Code. Nothing herein is intended or shall be deemed to be a determination with respect to the validity, enforceability, perfection, priority or avoidability of the Prepetition Lender's Liens.

      G.     Subject to the provisions of the DIP Loan Agreement, the DIP Lender has agreed to provide postpetition financing to and for the benefit of the Debtors to be used for (i) the Debtors' general working capital and operational expenses, (ii) administration of the Bankruptcy Cases (in each case of (i) and (ii), in accordance with a weekly cash flow budget prepared by the Debtors, in form and substance acceptable to the DIP Lender), and (iii) costs, expenses, closing payments, and other payment amounts contemplated in the DIP Loan Agreement.

      H.     Due and appropriate notice of the Interim Hearing and the relief granted herein has been provided (by hand, fax, overnight mail, email or courier) to (i) counsel to the Prepetition Senior Lender, (ii) the United States Trustee, (iii) the creditors included on the list filed under Bankruptcy Rule 1007(d), (iv) counsel to DIP Lender, (v) all parties identified in financing statements appearing of record with the State of Michigan as of January 19, 2016, or otherwise known to the Debtors to have or assert liens on or security interests in any of the Debtors' assets, (vi) all parties who filed requests for notice pursuant to Bankruptcy Rule 2002, and (vii) all governmental agencies having taxing authority over the Debtors. In view of the urgency of the relief requested, such notice constitutes sufficient notice under Bankruptcy Rule

4001 and no other notice of the Motion or the interim relief granted herein need be given, except as expressly provided herein in connection with the Final Hearing (defined below).

I.    Good cause has been shown for the entry of this Interim Order.  Among other things, entry of this Interim Order will minimize disruption of the Debtors' businesses and operations and permit them to meet payroll for their approximately fifty-seven employees and other operating expenses, obtain needed goods and services and retain customer and supplier confidence by demonstrating an ability to maintain normal operations pending the prompt completion of a going concern sale process.  The financing arrangements authorized hereunder are vital to avoid immediate and irreparable harm to the Debtors' estates.  Consummation of such financing therefore is in the best interests of the Debtors' estates.

J.    Each Debtor is a duly organized, validly existing entity, and each Debtor has the requisite power and authority to own, lease, and operate its property, including, without limitation, the DIP Collateral.  Subject to the entry of this Interim Order, each Debtor has the requisite power and authority to enter into, execute, deliver, and perform its obligations under the terms of the DIP Financing Documents and to incur the obligations provided for therein.  Upon entry of this Interim Order, the DIP Financing Documents shall constitute the valid and legally binding obligations of each Debtor, enforceable against each Debtor in accordance with their terms.  Except for the entry by the Court of this Interim Order, no consent or waiver of, filing with, authorization, approval or other action by any shareholder, any federal, state or other governmental authority or regulatory body or any other Person, which has not already been obtained or done, is required in connection with the execution, delivery and performance by any Debtor of any of the documents required as a condition to the validity or enforceability of the DIP Financing Documents.

K.    The financing authorized hereunder has been negotiated in good faith and at arm's length. The terms of such financing are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Any credit extended and loans made to the Debtors pursuant to this Interim Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, section 364(e) of the Bankruptcy Code, and the DIP Lender and Prepetition Senior Lender shall have all of the protections thereunder.

L.    The DIP Lender and the Prepetition Senior Lender have consented to the terms of this Interim Order and its continuation as a Final Order.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.    The Motion is granted on an interim basis and on the terms set forth herein.  Any objections to the Motion with respect to the entry of this Interim Order that have not previously been withdrawn or resolved are hereby denied and overruled.

2.    The Debtors are hereby authorized to (a) borrow money and otherwise obtain credit pursuant to the credit facility (the "DIP Facility") set forth in the DIP Financing Documents, including the DIP Loan Agreement, and this Interim Order (all loans, advances and any other indebtedness or obligations, contingent or absolute, which may now or from time to time hereafter be owing by the Debtors to the DIP Lender under the DIP Financing Documents, the "Postpetition Loans"), and (b) perform their obligations hereunder and thereunder (i) in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Documents, and (ii) in compliance with, and for the purposes of funding those expenses set forth in, the budget attached as Exhibit B to this Interim Order (as may be modified or supplemented from time to time with the prior written consent of the DIP Lender without the need for further

order of this Court; provided that such modifications or supplements (x) are not material in the good faith belief of the Debtors and DIP Lender, or (y) are additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the DIP Lender and the Debtors agree after counsel for any Committee that has been appointed in these Bankruptcy Cases has been given three (3) business days' notice to object and request a hearing, the "Budget"). The determination of compliance with the Budget shall be made on a week-ending basis for each week until the occurrence of a Termination Event (defined in paragraph 15). The Debtors shall be in compliance with the Budget so long as the difference between (a) actual total cash receipts (exclusive of borrowings of Postpetition Loans and cash on hand immediately prior to the Petition Date) and (b) actual total cash disbursements for the cumulative period beginning on and continuing after the Petition Date ("Net Cash Flow") does not vary unfavorably by more than $500,000 from the Projected Net Cash Flow set forth on the line of the Budget entitled "Cumulative Net Cash Flows Before DIP Financing" for the same period ("Permitted Variance"). The Debtors are authorized to enter into amendments, modifications and supplements to the Budget, and what they in good faith believe are non-material amendments, modifications and supplements to the DIP Financing Documents without further Court order as may be agreed upon in writing by the Debtors and the DIP Lender after consulting with counsel for the Committee, if any. Notwithstanding any other provision of this Interim Order, the DIP Lender shall not have any obligation or commitment to make any Postpetition Loans pursuant to this Interim Order if the conditions precedent provided for herein have not been satisfied. The Debtors are authorized to use Cash Collateral of the DIP Lender and Prepetition Senior Lender in the ordinary course of their businesses to pay amounts in accordance with the Budget (plus any Permitted Variance).

3.      The Debtors are hereby authorized to borrow up to an aggregate principal amount of $5,500,000 pursuant to the DIP Financing Documents on a weekly basis in accordance with the Budget (which includes the Permitted Variance).   Absent further order of the Court, borrowings under this Interim Order prior to entry of the Final Order shall not exceed $3,600,000, through the Final Hearing (defined below) for entry of the Final Order ("Interim Cap").

4.      Prior to entry of the Final Order, the DIP Financing Documents and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lender.  Upon entry of the Final Order, the DIP Lender shall make advances to the Debtors as provided in the Final Order, the DIP Financing Documents and the Budget.  Notwithstanding any other provision of this Interim Order or the DIP Financing Documents, the DIP Lender shall be under no obligation to fund the Postpetition Loans, for any purpose, in an amount greater than the Interim Cap until entry of the Final Order.

5.      The Postpetition Loans shall bear interest at the applicable rates (including default and non-default interest rates) set forth in the DIP Financing Documents.  The DIP Lender shall be paid all interest, fees, costs and expenses as set forth in the DIP Financing Documents.  Neither of the Debtors nor the DIP Lender shall be obligated to file any application with the Court for approval or payment of the costs and expenses, subject to review by the United States Trustee and, if appointed, the Committee, with respect to reasonableness upon ten (10) days' prior notice before payment.  Upon payment, such costs and expenses shall be deemed fully earned, indefeasibly paid, and non-refundable.  All such costs, fees, charges, and expenses shall be part of the Postpetition Loans (and are in addition to the amounts authorized in paragraph 3 above), and shall have the same rights, status, and priority as the Postpetition Loans.

9

6.     Except for the Carve-Out, as further consideration for the Postpetition Loans, no other costs or administrative expenses, pursuant to sections 506(c) and/or 105(a) of the Bankruptcy Code or otherwise, that have been or may be incurred in these chapter 11 cases, in any proceedings related hereto or in any subsequent chapter 7 cases, and no priority claims are or will be prior to or on parity with the superpriority claims of the DIP Lender.  Except as expressly provided in the case of the Carve-Out, in no event shall any such costs or expenses of administration be imposed upon any of the DIP Collateral without the prior written consent of the DIP Lender, and no such consent shall be implied from any action, inaction, or acquiescence. The DIP Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

7.     As security for the Postpetition Loans, the DIP Lender is hereby granted pursuant to sections 364(d)(1) and 364(c)(2) of the Bankruptcy Code, (i) a perfected first priority priming lien (the "Priming Lien") on any and all current and future assets of the Debtors of any nature or type whatsoever, including, without limitation, cash, accounts, accounts receivable, goods, instruments, investment property (including, without limitation, ownership interests in corporations, partnerships and limited liability companies), inventory, vehicles, customer lists, trademarks, copyrights, brands, know-how and other intellectual property, minerals, mineral rights, plant and equipment, patents, trade secrets, tax assets, real property and/or leasehold rights, personal property, any causes of action under the Bankruptcy Code or applicable non-bankruptcy law, and all other tangible and intangible assets, and any and all proceeds of the foregoing, but specifically excluding causes of action and recoveries or proceeds pursuant to chapter 5 of the Bankruptcy Code ("Avoidance Actions and Recoveries"); (ii) a first priority pledge of the shares, limited liability company interests, capital stock and/or equity interests held directly by each of the Debtors (x) that have not previously been pledged to third parties other

10

than the Prepetition Senior Lender, and (y) exclusive of shares or equity that GLC owns or otherwise holds in the DIP Lender; and (iii) constructive control over all of the Debtors' bank accounts in similar form and substance of lockbox and/or control accounts customary for transactions of this nature exercisable upon an Event of Default (as hereinafter defined) and stay relief from the Court having first been obtained, or as may be provided in the Interim Order and Final Order, for the purposes of constituting perfection under applicable non-bankruptcy law (collectively, but exclusive of Avoidance Actions and Recoveries, the "DIP Collateral").  The Priming Lien shall (a) be subject and subordinate to the Carve-Out, (b) have priority over valid, perfected and unavoidable liens that as of the Petition Date were senior to the Prepetition Lender's Liens in the Prepetition Collateral, including those liens permitted under the Prepetition Financing Documents, (c) not include or encumber Avoidance Actions and Recoveries, and (d) have priority over the Prepetition Lender's Liens.

8.     Except as expressly set forth in this Interim Order: (a) the liens and security interests in the DIP Collateral granted in this Interim Order to secure the Postpetition Loans shall not be subject to any lien which is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; and (b) the liens and security interests in the DIP Collateral granted in this Interim Order shall not be subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise.  As used in this Interim Order, "Carve-Out" means: (i) unpaid fees of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930 and interest, if any, on such unpaid fees; (ii) unpaid fees and expenses of professionals of the Debtors (excluding "ordinary course professionals" not retained as "professional persons" under sections 327 or 328) and any Committee retained by an order of the Court pursuant to section 327, 328 or 1103(a) of the Bankruptcy Code (the "Professionals"), in each case, incurred prior to the receipt of a Termination Notice (defined in ¶15 below), to the

11

extent such fees and expenses of the Professionals for the Debtors and the Committee are (a) within the amounts set forth in the Budget approved by the DIP Lender, plus the Permitted Variance, (b) subsequently allowed by the Court under sections 330, 331, or 363 of the Bankruptcy Code or other Court order (excluding such "ordinary course professionals"), and (c) not otherwise paid from DIP Collateral or from retainers or any professional expense escrow account established by the Debtors; (iii) any success fee under the Budget (subject to adjustment based on an increase or decrease of the purchase price) that may become due to Media Venture Partners, LLP under the terms of its engagement letter with GLC; (iv) any success fee that may become due to John Summersett under the terms of his Employment Agreement dated as of January 8, 2016 (however, nothing in this Order approves or disapproves such success fee); (v) a success fee under the Budget that may become due to Gordon Schreur under his employment contract in the amount of $75,000 (however, nothing in this Order approves or disapproves such success fee), (vi) the amount not to exceed $927,661 to pay administrative expenses under the Budget incurred after the closing of a sale of substantially all of the Debtors' assets, and (vii) fees and expenses of any chapter 7 trustee and any chapter 7 professionals in an aggregate amount not to exceed $25,000; provided that nothing in this Order limits the aggregate amount of such fees and expenses that may be incurred (only the amount of the Carve-Out under this clause (vii)). Notwithstanding any other provision in this Interim Order, the Carve-Out shall not include the fees and expenses, if any, of any of the Professionals incurred, directly or indirectly, in respect of, arising from or relating to: (i) the initiation, joinder or prosecution of any action contesting the indebtedness owed under the Post-Petition Loans or the validity, priority, enforceability or extent of the claims, liens or security interests of the DIP Lender; (ii) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the DIP Lender of any of its rights and remedies under this Interim Order or the DIP Financing Documents (other than to

12

enforce the terms of the Interim Order and the Final Order and or the DIP Financing Documents); (iii) the research, review, analysis, investigation, initiation, prosecution or pursuit of any litigation, claim, objection or cause of action of any kind or nature whatsoever against the DIP Lender (whether or not arising from or related to prepetition or postpetition liens, security interests, acts, omissions or other conduct); or (iv) any request to borrow money other than pursuant to the terms of this Interim Order and the DIP Financing Documents. The Carve-Out shall only be available to pay the fees and expenses of Professionals to the extent cash or other immediately available unencumbered and unrestricted funds are not otherwise available at the time or times that any payment of fees or expenses is allowed by the Court under sections 330, 331, or 363 of the Bankruptcy Code or otherwise permitted to be paid by Court Order or applicable bankruptcy law.   The Debtors shall be permitted to pay compensation and reimbursement of expenses allowed consistent with this Interim Order and the Budget (plus any Permitted Variance) and an order of the Court (including pursuant to any monthly interim compensation order that may be entered by the Court), and payable under sections 330, 331 and 363 of the Bankruptcy Code, and the Carve-Out shall be reduced by the amount of any compensation and reimbursement of expenses paid (to the extent ultimately allowed under the Bankruptcy Code) from the DIP Collateral. Nothing in this Interim Order shall be construed as limiting (A) the amount of compensation and reimbursement of expenses paid or incurred that may be requested by Professionals and ultimately approved by the Court or (B) the right of any party to object to such requests or approvals. Notwithstanding anything contained in this Interim Order to the contrary, without the consent of the DIP Lender, the right of the Debtors and the Professionals to assert a surcharge under section 506(c) of the Bankruptcy Code against the property securing the claims of the DIP Lender and, upon entry of the Final Order, Prepetition Senior Lender for the amount of fees and expenses incurred by Professionals that exceeds the

Budget (plus the Permitted Variance) is waived.  Notwithstanding anything herein to the contrary, DIP Lender will allow up to $7,500.00 of fees to be paid from the proceeds of the Postpetition Loans to the Committee's Professionals for the research, review, analysis, investigation, initiation, prosecution or pursuit of any litigation, claim, objection or cause of action of any kind or nature whatsoever against the DIP Lender (whether or not arising from or related to prepetition or post-petition liens, security interests, acts, omissions or other conduct), provided, that 60 days after the Committee has retained counsel, the Committee will be barred from bringing any action before the Court seeking to challenge the priority or lien rights of the Prepetition Senior Lender's pre-petitions claims.  Nothing in this Interim Order prohibits or limits the Committee's Professionals from seeking payment for rendering such services from sources other than the proceeds of the Postpetition Loans, the Carve-Out or, upon entry of the Final Order, section 506(c) of the Bankruptcy Code.  Nothing contained in this Interim Order shall operate to waive any rights and objections of the DIP Lender, Debtor, Committee or any other parties in interest with respect to section 363(f) of the Bankruptcy Code.

9.    In addition, the Postpetition Loans shall have superpriority in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), or 726 of the Bankruptcy Code, (a) subject to the Carve-Out, and (b) excluding proceeds of the Avoidance Actions and Recoveries (which shall not be available to satisfy any claims under section 364(c)(1) or 507(b) of the Bankruptcy Code of the DIP Lender or Prepetition Senior Lender). Notwithstanding section 726 of the Bankruptcy Code, the Postpetition Loans shall also have superpriority over all administrative expenses of a chapter 7 trustee and any chapter 7 professionals to the extent such expenses exceed the $25,000 Carve-Out (in clause (vii)) in the aggregate.  Except for the Carve-Out and with respect to proceeds of Avoidance Actions and

14

Recoveries, (a) no costs or administrative expenses that have been or may be incurred in the Debtors' chapter 11 cases, in any conversion of the Debtors' chapter 11 cases to a case pursuant to chapter 7 of the Bankruptcy Code, or in any other proceeding related thereto, and (b) no priority claims, including, without limitation, any other superpriority claims, are or will be prior to or on a parity with the claims of the DIP Lender, against the Debtors arising, as applicable, out of the Postpetition Loans or any provision of this Interim Order or with the liens and security interests granted herein on, in and to the DIP Collateral.

10.     As adequate protection, and subject to the last sentence in this paragraph 10, the Prepetition Senior Lender is hereby granted (i) valid, binding, enforceable and perfected liens in all DIP Collateral (the "Adequate Protection Liens"), but only to the extent the Prepetition Senior Lender had, as of the Petition Date, valid, perfected, enforceable and unavoidable security interests in the Prepetition Collateral, and only to the extent of any diminution in the value of the Prepetition Senior Lender's valid and perfected (as of the Petition Date) security interests in such collateral, and (ii) superpriority claims (the "Prepetition Debt Priority Claims") in accordance with the provisions of section 507(b) of the Bankruptcy Code over all administrative expenses of the kinds specified in sections 105, 326, 328, 330, 331, 503(b), 507(a), 546(c), or, upon entry of the Final Order, 726 of the Bankruptcy Code, but only to the extent the Prepetition Senior Lender had, as of the Petition Date, valid, perfected, enforceable and unavoidable security interests in the Prepetition Collateral and only to the extent (x) of any diminution in the value of the Prepetition Senior Lender's valid and perfected (as of the Petition Date) security interests in such collateral and (y) the Adequate Protection Liens are inadequate to protect against any such diminution in value.  The Adequate Protection Liens and the Prepetition Debt Priority Claims (a) are subject and subordinate to the Priming Lien granted to secure the Postpetition Loans in the DIP Collateral and the superpriority claims granted to the DIP Lender, (b) are subject and

subordinate to the Carve-Out, and (c) shall not be secured by, or repayable from, Avoidance Actions and Recoveries.

11.     Subject to the entry of a Final Order, the Debtors and their estates (and any party in interest acting on behalf of the Debtors with standing to do so under applicable law) hereby irrevocably waive, and are barred from asserting or exercising any right (a) without the DIP Lender's prior written consent (which may be withheld in its sole reasonable discretion) or (b) without the indefeasible payment and satisfaction in full in cash of the Postpetition Loans: (i) to seek or consent to occur any modification, stay, vacation or amendment to the Interim Order, the Final Order or any DIP Financing Document; (ii) to seek or consent to occur a priority claim or administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever including, without limitation, any administrative expense of the kind specified in Bankruptcy Code § 105, 326, 328, 330, 331, 364(c) 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114) equal or superior to the priority claim of the DIP Lender in respect of the obligations under the DIP Financing Documents, except with respect to the Carve-Out or in connection with the Avoidance Actions and Recoveries; (iii) to seek or consent to occur any liens on or security interests in any DIP Collateral having a priority equal or superior to the lien securing the Postpetition Loans, other than with respect to the Carve-Out; (iv) to seek or consent to occur any order which authorizes the payment of any indebtedness incurred prior to the Petition Date (except pursuant to motions or applications filed by the Debtors prior to the entry of the Final Order); (v) to seek or consent to occur any order seeking authority to take any action that is prohibited by the terms of the DIP Financing Documents, the Interim Order or the Final Order or refrain from taking any action that is required to be taken by the terms of the DIP Financing Documents, the Interim Order or the Final Order; (vi) to return goods pursuant to section 546(h) of the Bankruptcy Code to any

16

creditor of the Debtors or to consent to any creditor taking any setoff against any of such creditor's pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise; (vii) to seek a surcharge of the DIP Collateral under section 506(c) of the Bankruptcy Code; (viii) to seek nonconsensual use of Cash Collateral under section 363 of the Bankruptcy Code at any time, or (ix) to seek or consent to occur any other action that would materially adversely affect the DIP Lender (in such capacity) in any way.

12.     Unless otherwise ordered by the Court, the Debtors may not obtain entry of an order authorizing a sale of any of their assets outside the ordinary course of business (whether under a plan of reorganization or otherwise) unless (a) the Postpetition Loans are paid in full or (b) (i) the DIP Lender consents in its sole discretion to such sale (including consent to the form and substance of any asset purchase agreement and any sale order), and (ii) subject to the terms of this Interim Order and the Final Order, and any asset purchase agreement approved by the DIP Lender in its sole discretion, all proceeds realized from any Court-approved sale of DIP Collateral (in excess of the maximum amount necessary to satisfy the Carve-Out, whether or not then incurred or payable) are to be transferred to the DIP Lender for immediate application in reduction of the Postpetition Loans, until payment in full in cash of all Postpetition Loans.

13.     From and after the Petition Date, unless otherwise approved by the DIP Lender, the proceeds of the Postpetition Loans and the DIP Collateral shall not be used to pay expenses of the Debtors or otherwise disbursed except for: (a) those expenses, payments, and/or disbursements that are expressly set forth in the Budget (subject to the Permitted Variance) or otherwise permitted under this Interim Order and the Final Order, including the fees and expenses of Professionals; and (b) amounts due to the DIP Lender, and its accountants, financial consultants, attorneys or other professionals hereunder; provided that nothing in the DIP Financing Documents or this Interim Order is intended or shall be construed to waive any of the

17

DIP Lender's rights to object to or otherwise contest the reasonableness of the fees and expenses of the Professionals. Neither the proceeds of the DIP Facility nor the Carve-Out shall be utilized (i) to attack the validity, priority or enforceability of any of the postpetition liens or security interests of the DIP Lender, (ii) to research, review, analyze or investigate with respect to or in connection with any litigation, claim, objection or cause of action of any kind or nature whatsoever against the DIP Lender (whether or not arising from or related to pre-petition or postpetition liens, security interests, acts, omissions or other conduct) or (iii) to file, prosecute or otherwise pursue any litigation, claim, objection or cause of action of any kind or nature whatsoever against the DIP Lender (whether or not arising from or related to pre-petition or post-petition liens, security interests, acts, omissions or other conduct).

14.     The automatic stay under section 362(a) of the Bankruptcy Code as it may otherwise be in effect shall be, and it hereby is, modified to the extent necessary to permit the DIP Lender to retrieve, collect, and apply payments and proceeds in respect of the DIP Collateral in the ordinary course of administration of the Postpetition Loan, and to take all acts authorized by the terms and provisions of this Interim Order.

15.     Upon and after receiving written notification of a Termination Event from DIP Lender (a, "Termination Notice"), the Debtors shall no longer, pursuant to this Interim Order or otherwise, be authorized to borrow funds hereunder absent a waiver of the Termination Event or the consent of DIP Lender or, commencing fourteen (14) business days' after the date that a Termination Notice concerning a Termination Event has been given as provided below, to use Cash Collateral (but DIP Lender shall have no obligation to make loans or advances hereunder) without further Court order, except to pay or otherwise fund the payment of (i) the Carve-Out (together with any professional fees and expenses incurred during the prior fourteen (14) business days), (ii) checks and other instruments that have been issued in payment of obligations

18

incurred in accordance with the Budget or in the ordinary course of business after the Petition

Date but before the expiration of the fourteenth (14th) business day after Debtors have received a

Termination Notice, and (iii) any accrued but unpaid payroll and associated taxes incurred or

earned after the Petition Date but before the expiration of the fourteenth (14th) business day after

Debtors have received a Termination Notice.  The term "Termination Event" shall mean the

occurrence of the earlier of:

    (a)    Any of the following "Events of Default":

        i.    Debtors shall fail to pay any Postpetition Loans in cash after such payment has become due;

        ii.    Any report, certificate or other document delivered to the DIP Lender pursuant to the DIP Financing Documents, the Interim Order or the Final Order shall have been incorrect in any material respect when made or deemed made;

        iii.    The failure of the Debtors to comply in all material respects with any covenant, agreement or terms and conditions of the Interim Order, the Final Order and the DIP Financing Documents;

        iv.    Any of the Debtors is enjoined, restrained or in any way prevented by the order of any court or any governmental authority from conducting all or any material part of its business for more than three (3) consecutive business days;

        v.    Any material damage to, or material loss, theft or destruction of, any DIP Collateral, whether or not insured, or any strike, lockout, labor dispute, embargo, condemnation, act of God or public enemy, or other casualty (whether or not insured) which causes, in each case, for more than three (3) consecutive business days, the cessation or substantial curtailment of revenue producing activities at any facility of the Debtors, if any such event or circumstance could reasonably be expected to have a material adverse effect on the DIP Collateral;

        vi.    The entry of an order in the Bankruptcy Cases which stays, modifies (in any manner adverse to the DIP Lender), or reverses the Interim Order or Final Order or which otherwise materially adversely affects, as determined by the DIP Lender in its sole discretion, the effectiveness of the Interim Order or Final Order without the express written consent of the DIP Lender, provided,

however, that any terms in the Final Order consented to by DIP Lender in its sole discretion that are different from the Interim Order shall not constitute an Event of Default;

vii.    The conversion of any Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;

viii.    The appointment of a trustee for the Debtors;

ix.    The dismissal of any Bankruptcy Case; provided that the DIP Lender has not consented in writing to such dismissal;

x.    The entry of any order which provides relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code § 362 that permits any creditor to (i) realize upon, or to exercise any right or remedy with respect to, any material portion of the DIP Collateral, or (ii) to terminate any license, franchise or similar agreement, where, in each case, the exercise of such right or remedy or such realization or termination would be reasonably likely to have a material adverse effect on the DIP Collateral;

xi.    Subject to the allowance and payment of any amounts due under the Carve-Out, the filing of any application by the Debtors without the express written consent of the DIP Lender for the approval of a super-priority claim in the Bankruptcy Cases which is pari passu with or senior to the priority of the claims of the DIP Lender, or there shall arise any such super-priority claim under the Bankruptcy Code;

xii.    Except for payments authorized by order of the Court pursuant to a motion or other application filed prior to the entry of the Final Order or pursuant to the Budget (subject to the Permitted Variance), the payment or other discharge by the Debtors of any prepetition indebtedness without the written consent of the DIP Lender;

xiii.    The filing of any motion by the Debtors seeking, or the entry of any order in the Bankruptcy Cases: (a) permitting working capital or other financing (other than ordinary course trade debt or unsecured debt afforded priority under section 503(b) of the Bankruptcy Code) for any of the Debtors from any person other than the DIP Lender (unless the proceeds of such financing are to be used to pay in full in cash all Postpetition Loans and other obligations arising under the DIP Financing Documents, the Interim Order and the Final Order); (b) granting a lien on, or security interest in, any of the DIP Collateral, other than with respect to the DIP Financing Documents (unless such liens are granted in connection with a financing, the proceeds of which are

20

to be applied to the payment in full in cash of Postpetition Loans and other obligations arising under the DIP Financing Documents, the Interim Order and the Final Order, and other than liens granted as adequate protection for pre-petition liens on the Debtors' assets, which adequate protection liens are junior in priority to the DIP Lender's super priority priming liens); (c) except as permitted by the DIP Financing Documents, the Interim Order or the Final Order or without the prior written consent of DIP Lender, (i) permitting the use of any of the DIP Collateral pursuant to Bankruptcy Code § 363(c), or (ii) permitting recovery from any portion of the DIP Collateral of any costs or expenses of preserving or disposing of such DIP Collateral under Bankruptcy Code § 506(c);

xiv.    The filing of a motion or other pleading by the Debtors seeking the entry of an order confirming a plan of reorganization (and/or approving a disclosure statement related thereto) that does not require payment in full in cash of all Postpetition Loans and other obligations under the DIP Financing Documents, the Interim Order and the Final Order on the consummation date of such plan of reorganization, and as to which the DIP Lender has not consented in writing;

xv.    If any of the DIP Financing Documents, Prepetition Financing Documents, DIP Loan or Prepetition Debt shall be cancelled, terminated, revoked or rescinded; or the DIP Lender's or Prepetition Senior Lender's lien on any of the DIP Collateral or Prepetition Collateral shall cease to be perfected or have the priority contemplated by the DIP Financing Documents and Prepetition Financing Documents (as modified by the Interim Order or Final Order); or any motion, suit, action at law or in equity, or any other legal proceeding to cancel, revoke, rescind or otherwise challenge the DIP Financing Documents, Prepetition Financing Documents or the DIP Lender's or Prepetition Senior Lender's lien on any of the DIP Collateral or Prepetition Collateral is commenced by the Debtors; or any portion of the Interim Order or Final Order is determined to be null and void, invalid or unenforceable by the Court or another court of competent jurisdiction in any action commenced or asserted by any other party in interest in the Bankruptcy Cases;

xvi.    The Debtors shall fail to file a motion seeking approval of sale and bidding procedures for the sale of substantially all of the Debtors' assets by January 28, 2016;

xvii.    The Debtors shall fail to receive Court approval of the sale and bidding procedures for the sale of substantially all of the Debtors' assets by March 3, 2016;

xviii.    The Debtors shall fail to hold the auction for substantially all of the Debtors' assets by April 15, 2016;

xix.    The Debtors shall fail to receive Court approval for the sale of substantially all of Debtors' assets by April 29, 2016; or

xx.    The Debtors shall fail to consummate the sale of substantially all of the Debtors' assets (a) if the stalking horse bidder is the successful bidder at the auction, by May 16, 2016, or (b) if another buyer (other than the stalking horse bidder) is the successful buyer at the auction, by July 29, 2016.

(b)    The Debtors' failure to comply with the terms and conditions of this Interim Order (including, without limitation, the Debtors' failure to comply with the Budget, subject to the Permitted Variance) for more than three (3) consecutive days after receiving written notice of the failure from DIP Lender.

Upon five (5) business days' prior written notice (which notice may be given by facsimile or electronic mail) to (A) the Debtors and their counsel, (B) counsel to any Committee and (C) counsel to the United States Trustee of the occurrence of an Event of Default or Termination Event, which is not subsequently cured or waived during such notice period, (x) the Postpetition Loans shall mature and any and all Postpetition Loans shall become due and payable in full in cash (y) the DIP Lender shall have standing to move for an order to cause the Debtors to engage in a process to liquidate their assets pursuant to Bankruptcy Code § 363; and (z) the DIP Lender shall have the right to an emergency hearing (the "Emergency Hearing") requesting relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code § 362 to permit the DIP Lender to realize upon, or to exercise any right or remedy set forth herein or in the Postpetition Financing Documents or which may otherwise be available at law with respect to any portion of the DIP Collateral.  Nothing in this Interim Order or otherwise shall prohibit or

limit or otherwise restrict or condition in any way (a) the Debtors' right to defend against or object to any such relief sought by DIP Lender or to move or apply to the Bankruptcy Court for permission to abandon any property of the estate, including all or any portion of the DIP Collateral, or dismiss or convert any Bankruptcy Case, at any time and for any reason; or (b) the business or assets of Clinton County Telephone Company (a non-debtor subsidiary) or its subsidiaries.

16.    All obligations and commitments of the DIP Lender to make Postpetition Loans shall terminate and all Postpetition Loans shall become due and payable at the earliest of the following (each, a "Due Date"):  (i) May 11, 2016; (ii) the closing of a sale of substantially all of the assets of the Debtors pursuant to a sale conducted in accordance with the time parameters set forth in paragraph 15 of this Interim Order; (iii) the effective date of a confirmed plan of reorganization; (iv) conversion of any Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code; (v) appointment of a trustee for any of the Debtors; (vi) dismissal of any Bankruptcy Case; (vii) forty-five (45) days after entry of this Interim Order if the Final Order has not been entered prior to the expiration of such forty-five (45) day period; (viii) the date on which the Court enters a final order approving a postpetition financing between the Debtors and another lender(s) or investor(s) (as the case may be) (other than the DIP Lender); and (ix) five (5) business days after the DIP Lender notifies the Debtors and their counsel in writing of an Event of Default or Termination Event which is not subsequently cured or waived by the end of such notice period.  The DIP Lender may extend a Due Date in its sole discretion.

17.    Upon or after a Termination Event, the DIP Lender shall be fully authorized to, without providing any prior notice thereof to the Debtors, accelerate the Postpetition Loans and charge interest at the default rate set forth in the DIP Financing Documents.

18.     The rights, remedies, powers and privileges conferred upon the DIP Lender pursuant to this Interim Order shall be in addition to and cumulative with those contained in the DIP Financing Documents to the extent not inconsistent with the terms of this Interim Order.

19.     Notwithstanding the occurrence of a Termination Event or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the DIP Lender under this Interim Order shall survive a Termination Event except to the extent otherwise provided in this Interim Order.  Upon a Termination Event, the Postpetition Loans shall be immediately due and payable and the DIP Lender shall have all rights and remedies provided in the DIP Financing Documents and this Interim Order.  If it shall be necessary for the DIP Lender, at any time, to exercise any of its rights and remedies hereunder or under applicable law in order to effect repayment of the Postpetition Loans, or to receive any amounts or remittances due hereunder, including without limitation, foreclosing upon and selling all or a portion of the DIP Collateral, the DIP Lender shall, subject to this Interim Order and automatic stay relief from the Court having first been obtained, have the right to exercise such rights and remedies as to all or such part of the DIP Collateral as the DIP Lender shall, in its sole discretion, elect.  The DIP Lender shall be entitled to apply the payments or proceeds of the DIP Collateral in accordance with the provisions of this Interim Order, and in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or otherwise.

20.     The stipulations, findings and the release provisions hereof shall be binding upon all parties in interest, including, without limitation, the Debtors, all creditors of the Debtors, the Committee and any other committee appointed in these chapter 11 cases in connection with the Postpetition Loans made under this Interim Order and the DIP Financing Documents prior to the Final Hearing (and regardless of the terms of the Final Order).

24

21.    From and after the date of the entry of this Interim Order, all collections and proceeds of the DIP Collateral or services provided by the Debtors and all other cash or cash equivalents which shall at any time come into the possession or control of any of the Debtors, or to which the Debtors shall become entitled at any time, first shall be deposited in accounts of the Debtors as set forth in the order of the Court approving the Debtors' cash management system prior to disbursement.

22.    The Priming Lien and all other liens and security interests granted herein shall be, and they hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if the DIP Lender shall, in its sole discretion, choose to file any mortgages, financing statements, notices of liens and security interests or other similar documents, all such mortgages, financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby vacated to effect such filings.  The Debtors shall execute and deliver to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to evidence perfection of the liens and security interests granted herein.

23.    The Debtors, upon reasonable notice during ordinary business hours, shall permit representatives, agents and/or employees of the DIP Lender to have reasonable but not continuous access to their premises and their records (without unreasonable interference with the proper operation of the Debtors' businesses) and to make copies and take extracts therefrom and shall cooperate with, consult with, and provide to such persons all such non-privileged information as they may reasonably request.  In addition to the reports required by the DIP Financing Documents, the Debtors shall, by 5:00 p.m. (EDT) on the Wednesday of each week, provide to the DIP Lender, and its counsel, reports (in form satisfactory to the DIP Lender)

illustrating the updated weekly actual performance compared to the Budget prepared on a line-item basis, including the calculation of Net Cash Flow and the extent of compliance with the Permitted Variance.

24.     The Debtors shall timely comply with all of the covenants and conditions set forth in this Interim Order and the DIP Financing Documents.

25.     In making decisions to advance money or extend financial accommodations of any nature under this Interim Order or the DIP Financing Documents, in administering any advances, loans, or financial accommodations of any sort under this Interim Order or the DIP Financing Documents, or in taking any other action related to or in connection with any of the foregoing, the DIP Lender shall not owe any fiduciary duty to the Debtors, their creditors or their estates, and the DIP Lender's relationship with the Debtors shall not constitute nor be deemed to constitute a joint venture or partnership with the Debtors.

26.     If any of the Bankruptcy Cases is dismissed, converted, otherwise superseded or substantively consolidated, the DIP Lender's rights and remedies under this Interim Order and the DIP Financing Documents shall be and remain in full force and effect as if such Bankruptcy Case had not been dismissed, converted, superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, supersession or substantive consolidation, all of the terms and conditions of this Interim Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

27.     The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) in connection with the Postpetition Loans made under

this Interim Order and the DIP Financing Documents prior to the Final Hearing (and regardless of the terms of the Final Order).

28.     Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the postpetition financing arrangement contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, no such modification, amendment, or vacation shall affect the validity and enforceability of any lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment, or vacation, any claim granted hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein, with respect to any such claim.

29.     The Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, mortgages and financing statements) and to pay fees and expenses that may be required or necessary for the Debtors' performance hereunder, including, without limitation: (a) the execution of any of the DIP Financing Documents, and (b) the payment of the fees and other expenses described herein or in the DIP Financing Documents as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees and facility fees and reasonable attorneys', financial advisers,' accountants' fees and disbursements and other costs and expenses as set forth in the DIP Financing Documents.

30.     The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain

credit on the terms and conditions upon which the Debtors and the DIP Lender have agreed.
Thus, each of such terms and conditions constitutes a part of the authorization under section 364
of the Bankruptcy Code, and is, therefore, subject to the protections contained in section 364(e)
of the Bankruptcy Code.

      31.    The Debtors shall, within two (2) business days following the entry of this Interim
Order, serve by United States mail, first class postage prepaid, copies of the Motion with its
attachments, this Interim Order, and a notice of the hearing to be held on **March 3, 2016** (the
"Final Hearing") in the United States Bankruptcy Court for the Western District of Michigan, 1
Division Ave N, Room 200, Grand Rapids, MI 49503, to consider entry of the Interim Order
(with any necessary or required changes) as the Final Order on: (a) counsel to the Committee, if
any; (b) the creditors included on the list filed under Rule 1007(d); (c) the Office of the United
States Trustee; (d) counsel to the Prepetition Senior Lender; (e) counsel to the DIP Lender; (f) all
parties identified in financing statements appearing of record with the State of Michigan as of
January 19, 2016, or otherwise known to the Debtors to have or assert liens on or security
interests in any of the Debtors' assets; (g) the Internal Revenue Service; (h) all governmental
agencies having taxing authority over the Debtors, and (i) all parties who have timely filed
requests for notice under Rule 2002 of the Bankruptcy Rules. The Final Hearing notice shall
state that any party in interest objecting to the entry of the proposed Final Order shall file written
objections with the United States Bankruptcy Court Clerk for the Western District of Michigan
no later than **February 25, 2016** ("Objection Deadline"), which objections shall be served (with
a copy to chambers) so that the same are received on or before such date by:

      (a)    counsel for the Debtors, c/o Miller, Canfield, Paddock and Stone, P.L.C.,
Attn: Stephen S. LaPlante and Jonathan S. Green, 150 West Jefferson, Suite 2500, Detroit,
Michigan 48226;

(b)     counsel for Prepetition Senior Lender and DIP Lender, c/o Buchanan Ingersoll & Rooney PC, Attn: Christopher P. Schueller and Timothy P. Palmer, One Oxford Centre, 20th Fl, Pittsburgh, PA 15219; and

(c)     the Office of the United States Trustee.

Notwithstanding the Objection Deadline, any Committee that may be appointed in these Bankruptcy Cases may file an objection within the later of (i) 14 days of its formation, and (b) the Objection Deadline. If no objections are timely filed, the Interim Order may become a Final Order without the Final Hearing. If a timely objection is filed and served, then the Final Hearing will be held.

32.     Notwithstanding anything to the contrary herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) adequate protection of their respective interests in the DIP Collateral or relief from or modification of the automatic stay under section 362 of the Bankruptcy Code, (ii) request conversion of the chapter 11 cases to chapter 7, and (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (b) the right of DIP Lender or the Debtors to move the Court to interpret or enforce the terms of this Interim Order or the Final Order, as applicable, or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) not expressly addressed in this Interim Order.

33.     The equipment acquired or improved, or to be acquired or approved, in whole or in part, with federal funds under NTIA/BTOP Grant Award ##NT10BIX5570099 (to Bloomingdale Communications, Inc. in which GLC is a sub-recipient) and NT10BIX5570114 (to Merit Network, Inc. in which GLC is a sub-receipt) (identified in financing statements

29

2014022078-0 and 2014022275-8 filed by the National Telecommunications and Information Administration, U.S. Department of Commerce, "NTIA") (collectively, "BTOP Equipment") is subject to a federal interest of the NTIA during the useful life of such BTOP Equipment and, notwithstanding anything to the contrary in this Interim Order, the DIP Financing Documents or otherwise, including the liens granted to DIP Lender in paragraph 7 hereof or the Adequate Protection Liens granted to Prepetition Senior Lender in paragraph 10 hereof, any lien granted in or against the BTOP Equipment under this Interim Order or the DIP Financing Documents is subordinate to the federal interest in the BTOP Equipment in all respects and is only granted to the extent permitted by applicable law concerning the federal interest.

34.     Notwithstanding anything to the contrary in this Interim Order or the Motion, the DIP Lender's rights, if any, to use and/or occupy any premises leased by the Debtors in the event of an Event of Default shall be limited to such rights (a) as may be ordered by the Bankruptcy Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances; (b) to which the applicable landlord agrees in writing with the DIP Lender; or (c) already existing under applicable non-bankruptcy law.

35.     To the extent any provisions in this Interim Order conflict with any provisions of the Motion, the DIP Loan Agreement or any of the other DIP Financing Documents, the provisions of this Interim Order shall control.

36.     This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. There is no just reason to delay enforcement or appeal of this Interim Order.

**END OF ORDER**

*Order prepared and submitted by:*

Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Miller, Canfield, Paddock and Stone, PLC
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
Green@millercanfield.com

Proposed Attorneys to the Debtors
and Debtors in Possession

25746613.19\088888-01643
1/25/16

**Signed: January 28, 2016**



John T. Gregg
United States Bankruptcy Judge