UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

GREAT LAKES COMNET, INC., *et al.*,[1]

Debtors.

_____/

Case No. GL 16-00290-jtg
(Jointly Administered)

Chapter 11

Hon. John T. Gregg

**OPINION REGARDING MOTION TO CONDUCT
EXAMINATION UNDER FED. R. BANKR. P. 2004**

APPEARANCES: Max Schlan, Esq. and Jason M. Koral, Esq., COOLEY LLP, New York, New York; Judith Greenstone Miller, Esq., JAFFE RAITT, HEUER & WEISS, P.C., Southfield, Michigan, for the Official Committee of Unsecured Creditors. Stuart A. Gold, Esq., GOLD, LANGE & MAJORAS, P.C., Southfield, Michigan, for Local Exchange Carriers of Michigan, Inc., a/k/a 123.net.

This matter comes before the court on a motion requesting authority to conduct an examination under Fed. R. Bankr. P. 2004 [Dkt. No. 563] (the "Motion") filed by the Official Committee of Unsecured Creditors in the above-captioned case (the "Committee"). Local Exchange Carriers of Michigan, Inc., a/k/a 123.net ("LEC-MI") filed an objection to the Motion [Dkt. No. 580] (the "Objection"), which LEC-MI asserts is designed to circumvent the discovery rules, Fed. R. Bankr. P. 7026 - 7037, in a yet to be commenced adversary proceeding against LEC-MI. For the following reasons, the court shall grant the Motion.

**JURISDICTION**

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1] The debtors are: Great Lakes Comnet, Inc. (Case No. 16-00290) and Comlink, L.L.C. (Case No. 16-00292-jtg).

**BACKGROUND**

Great Lakes Comnet, Inc. and Comlink L.L.C., the debtors in these jointly administered cases (collectively, the "Debtors"), provided telecommunication services to various third-party carriers.  From October 2003 through September 2014, LEC-MI conducted business with the Debtors, the nature of which is unimportant to this matter.  At some point, the Debtors became the subject of scrutiny by the Federal Communications Commission.  In a complaint filed with the FCC, AT&T made certain allegations against the Debtors, which also implicated, whether directly or indirectly, LEC-MI.  According to the Motion, the Debtors made certain payments to LEC-MI pursuant to an access revenue sharing agreement.  The inference is that these payments were likely improper in one respect or another.

On January 26, 2016, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Less than six months later and after an expeditious sale process, the Debtors sold substantially all of their assets.  In the months leading up to consummation of the sale, the Committee undertook an investigation with respect to potential causes of action against various parties, including LEC-MI.  LEC-MI appears to have voluntarily provided information to the Committee without the need for an examination under Fed. R. Bankr. P. 2004.   To date, no contested matter or adversary proceeding has been commenced against LEC-MI.

The Committee's informal but ambitious requests for information, and LEC-MI's responses, continued for several months.  However, according to the Committee, at some point, LEC-MI stopped providing additional information or even responding to the Committee's communications.  In August 2016, LEC-MI informed the Committee that LEC-MI had acted in good faith by producing all of the information requested by the Committee.[2]  The Committee

---

[2]   There is nothing to indicate that LEC-MI has been evasive.  Up to this point, LEC-MI had no legal obligation to provide any information to the Committee.

persisted with its requests, including for electronically stored information, the production of which can, of course, be unduly burdensome and expensive. The responses the Committee subsequently received from LEC-MI were apparently unsatisfactory, because, after seeking consent from LEC-MI for an examination in accordance with the Local Bankruptcy Rules, the Committee filed the Motion on September 23, 2016.

LEC-MI timely filed its Objection in which it argues that relief under Fed. R. Bankr. P. 2004 is inappropriate under the circumstances. LEC-MI contends that it has already produced all discoverable documents in its possession, custody and control. LEC-MI also notes that a significant portion of the documentation requested is already in the possession, custody and control of the Debtors. Finally, LEC-MI asserts that the Motion is essentially nothing more than premature discovery.

The court held a hearing regarding the Motion on October 14, 2016. After careful consideration, the court shall grant the Motion and overrule the Objection.

### **DISCUSSION**

Rule 2004 of the Federal Rules of Bankruptcy Procedure provides that on a motion of any party in interest, the court may order the examination of any entity. Fed. R. Bankr. P. 2004(a). Any such examination is limited to "the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . .," all of which may be obtained through a request for production of documents or depositions. Fed. R. Bankr. P. 2004(b) – (c).

Without question, the scope of any examination under Fed. R. Bankr. P. 2004 is extremely broad. *See*, *e.g.*, *In re Davis*, 452 B.R. 610, 618 (Bankr. E.D. Mich. 2011); *In re DeShetler*, 453 B.R. 295, 302 (Bankr. S.D. Ohio 2011) (citation omitted). In Chapter 11, the scope of an

examination may be further expanded to "the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan."   Fed. R. Bankr. P. 2004(b).  The Sixth Circuit Court of Appeals has stated as follows with respect to the predecessor to Fed. R. Bankr. P. 2004:

> Examination of a designated person under this section may be as broad in scope as that permitted of the bankrupt himself.  The examination is in the nature of a discovery proceeding.  It provides the means for a thorough investigation into the affairs of the bankrupt calculated to lead to the discovery and recovery of his assets and a determination of the amount of his indebtedness.  The relevancy of questions propounded is not to be determined by standards applied to the trial of issues, but by the broader test of relevancy applied under Rule 26 of the Federal Rules of Civil Procedure. . . The trustee may inquire at large and without limit except in cases of plain abuse, to be determined in the Court's discretion.  The inquiry may even be a fishing expedition.  It is no objection that it leads to the prosecution of an action against the witness.  In proceedings for the reorganization of a corporation under the Bankruptcy Act . . . the examination before a master appointed by the Court may be exploratory and groping. . .

*Chereton v. United States*, 286 F.2d 409, 413 (6th Cir. 1961) (citations omitted).

In this case, the Committee has clearly set forth good cause for its examination.  *See*, *e.g.*, *In re Davis*, 452 B.R. at 617 (citation omitted) (threshold inquiry is whether good cause exists for investigation).  The Committee sufficiently explained in its Motion and at the hearing that it is seeking additional information in order to determine whether the Debtors' estates have causes of action against LEC-MI, including those raised in the complaint filed with the FCC.  According to the Committee, by conducting an investigation through an examination under Fed. R. Bankr. P. 2004, it will be better able to determine which causes of action, if any, to pursue against LEC-MI.

In its response, LEC-MI takes no issue with any particular requests made by the Committee or the scope of the investigation.  Instead, it complains that the Motion is nothing more than a

"clandestine attempt" to circumvent the discovery rules.  LEC-MI's argument is founded in the pending proceeding rule, which states that once a contested matter or adversary proceeding has been commenced, parties are subject to the discovery rules under Fed. R. Bankr. 7026-7037 and may not seek relief under Fed. R. Bankr. P. 2004.  *See*, *e.g.*, *In re Michalski*, 449 B.R. 273, 281 n.4 (Bankr. N.D. Ohio 2011) (citations omitted) (discovery under Fed. R. Bankr. P. 2004 "no longer appropriate" when proceeding or contested matter initiated); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (noting "well recognized rule" that once proceeding commenced, discovery should be pursued under Federal Rules of Civil Procedure and not Fed. R. Bankr. P. 2004).  LEC-MI therefore contends that the examination requested by the Committee should be precluded.  Here, however, the pending proceeding rule is not applicable.  As LEC-MI concedes, there is no pending proceeding.  No adversary proceeding or contested matter has been commenced.  As such, the court finds LEC-MI's reliance on the pending proceeding rule unpersuasive.

Although LEC-MI raises some valid concerns regarding harassment and burden, they do not outweigh the needs of the Committee.  *See In re Davis*, 452 B.R. at 617-18 (noting in rare cases, the subject's interests may outweigh the need of the examiner).  The Committee, acting as the *de facto* estate representative, is seeking to understand the facts giving rise to the transactions by and among the Debtors, LEC-MI, and possibly third parties in advance of any adversary proceeding.  The court finds the Committee's investigation prudent for several reasons.

First, the Committee is seeking to narrow the causes of action that it might assert in any complaint so as to avoid the "kitchen sink" or "shot gun" approach.  And, the court understands from counsel to the Committee that any complaint will include only those causes of action that are meritorious.  In light of the Committee's continuing investigation, the court shall expect the

Committee to file a streamlined complaint, if any. In other words, because of its thorough investigation, the Committee will not need to pursue causes of action that have little to no chance of success. Such is often the case where an estate representative is plagued by the impending expiration of the statute of limitations and is forced to file a complaint with questionable causes of action. Here, the Committee will have sufficient time to assess causes of action against LEC-MI (and other persons) well in advance of the expiration of the applicable statute of limitations.[3]

Second, the Committee has indicated that it is seeking information from LEC-MI to evaluate not only potential causes of action, but also any affirmative defenses that LEC-MI might assert. *See In re Excello Press, Inc.*, 967 F.2d 1109, 1115 (7th Cir. 1992) (plaintiff should, to extent possible, conduct pre-filing inquiry into certain affirmative defenses). The court is confident that, upon review, the Committee will recognize any valid affirmative defense of LEC-MI and simply elect not to pursue any causes of action that are subject to a complete defense.

Finally, the Committee's continued investigation is justified by the pleadings standards required by the Federal Rules of Civil Procedure. Although the Committee has not identified with any detail the causes of action that it is considering, the Committee is likely mindful of the need to satisfy the plausibility pleading standard, and perhaps even the heightened pleading standard for fraud. Absent proper pleading, the Committee might find itself in a position where it lacks sufficient information to properly plead a cause of action but at the same time lack the ability to conduct any discovery (or, ironically, conduct an examination under Fed. R. Bankr. P. 2004 due to the pending proceeding rule). *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (concluding that no discovery may be conducted to make out plausible

---

[3] The same holds true for causes of action against third persons that any estate representative is considering. *See also* Deborah L. Thorne, *et al.*, *A Partial Solution to Preference Actions Run Amok*, Am. Bankr. Inst. J., Vol. XXVI, No. 9 (Nov. 2007).

claim, even where information cannot be obtained other than through defendant) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)).  Therefore, it is quite reasonable for the Committee to attempt to gather sufficient facts in advance so as to avoid being the subject of a motion to dismiss without any opportunity for discovery.

### CONCLUSION

For the foregoing reasons, the court shall grant the Motion.[4]  The court shall enter a separate order consistent with this Opinion.

---

[4]    The examination shall be limited to the production of documents requested in the Motion and shall not include ongoing requests for additional documents and the issuance of subpoenas without further order of the court.

**Signed: October 17, 2016**





John T. Gregg
United States Bankruptcy Judge